United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DANNY L. WEBB,

Petitioner,

v.

WARDEN, SALINAS VALLEY STATE PRISON,

Respondent.

Case No. 25-cv-07300-EKL

**ORDER DENYING PETITION AND CERTIFICATE OF APPEALABILITY**

Petitioner Danny Webb, a *pro se* state prisoner, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 1. Respondent filed an answer and a memorandum of points and authorities in support of it, and lodged exhibits with the Court.[1] ECF No. 10. For the reasons discussed below, the petition is DENIED.

## I. FACTUAL BACKGROUND

### A. Underlying Convictions

A jury found Petitioner guilty of first-degree murder, three counts of attempted murder, and other related counts and enhancements. *People v. Webb*, No. A165262, 2023 WL 8817852, at *2 (Cal. Ct. App. Dec. 21, 2023). Petitioner was sentenced to a prison term of 71 years to life. *Id.* at 3. The California Court of Appeal affirmed the conviction. *Id.* at *1. The California Supreme Court denied review. Answer, ECF No. 10-3, Ex. H at 1781.

Petitioner, through appellate counsel, filed a habeas petition in the California Court of Appeal in July 2023, which was denied in December 2023. *Id.*, Ex. I at 1786-1805, 1884.

[1] Petitioner was transferred to Kern Valley State Prison. *See* ECF No. 11. The Clerk is directed to substitute the Warden of Kern Valley State Prison as the Respondent. *See Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 894 (9th Cir. 1996) (explaining the proper respondent in 28 U.S.C. § 2254 habeas proceeding is the "state officer having custody" of the petitioner) (citation omitted).

Counsel filed a habeas petition with the California Supreme Court in January 2024, that was denied in a reasoned opinion in March 2025. *Id.*, Ex. J at 1886-1933, 2019.

**B. Relevant Trial Evidence**

The California Court of Appeal summarized the relevant trial evidence as follows:

> The Oakland Shooting
> On April 17, 2020, the victims, Justin Esco, Dontaye T., Deonte M., and Brandon L., drove from Bakersfield to Oakland, where Dontaye T. planned to buy marijuana. Upon arriving in Oakland, the group parked at a 76 gas station located near 98th Avenue and Edes Avenue. Dontaye T. learned that his marijuana contact was out of town and so he reached out to others, including Demarya V., to arrange an alternative plan. Eventually, Demarya V. told Dontaye T. he had arranged a deal and led them several blocks away to a car wash located next to a Shell gas station at Golf Links Road and Mountain Boulevard.
>
> Surveillance videos from the car wash and Shell station were played for the jury. Shortly before Demarya V. and the victims arrived, a black sedan parked across the street from the car wash and turned off its lights. A white truck and a silver car that had arrived with the black sedan were parked nearby but out of sight. Around 10:30 p.m., Demarya V. parked on the street in front of the car wash, leaving space in front of him. Esco, who was driving the victims' car, parked directly in front of Demarya V.
>
> Shortly after they arrived, Demarya V. pulled his car alongside the victims' car and said through the open window, "'The weed about to be here.'" The white truck pulled up directly behind Demarya V.'s car. As Demarya V. drove away, a man exited the truck's front passenger seat and opened fire on the victims' car. Another passenger started shooting from inside the white truck, and two people exited the black sedan parked across the street and also began shooting at the victims' car. Deonte M., seated behind the driver's seat of the victims' car, fired a gun over his shoulder through the back of the car.
>
> Esco died from multiple gunshot wounds. Deonte M. was injured in the shooting. When the assailants stopped firing and the white truck and black sedan drove off, Deonte M., Brandon L., and Dontaye T. got out of their car and ran to the Shell station next door. Shortly after they reached the Shell station, shots were fired at them from a silver car driving by.
>
> There was no evidence of appellant's blood, DNA, or fingerprints at either shooting scene.
>
> Appellant is Left at Kaiser Richmond Hospital
> At about 11:00 p.m. on April 17, 2020, a black sedan sped into the Kaiser Richmond parking lot. A man in his 20's got out, pulled appellant out of the car, and said he needed help. The man got back in the car and the black sedan drove off. Appellant had no identification or phone on him.

Surveillance video of the hospital parking lot and entrance was played for the jury. Shortly after the black sedan arrived, a white truck and a silver car also entered the hospital parking lot and waited near the black sedan. The black sedan then drove off, followed by the white truck and silver car.

Appellant had been shot in the chest and was unresponsive. He was hospitalized for over a week.

Cellphone Evidence

About five months before the shooting, appellant gave a phone number with a 707 area code as his personal number to a government agency. When appellant was arrested on May 28, 2020, he had the 707 cellphone and another phone on his person. The 707 cellphone had self-portraits of appellant and a photograph of appellant's debit card stored on it.

On the night of the shooting, at about 9:49 p.m., the 707 phone connected to a cell phone tower near the 76 gas station where the victims initially stopped. At about 10:35 p.m., the phone connected to a tower approximately three blocks from the car wash where the shooting occurred. Between 11:15 p.m. and 12:54 a.m., it connected to a tower near Kaiser Richmond.

Service for the 707 number was terminated on April 22, 2020, a few days after the shooting. On April 28, 11 days after the shooting, appellant informed a government agency that he had a new personal phone number.

Additional Evidence

Deonte M.'s sister had a child with appellant and Deonte M. testified he and appellant had a good relationship. Dontaye T. and Brandon L. testified they did not know appellant. Photographs of Esco's older brother and two other people known to associate with Esco were on the 707 phone associated with appellant. Appellant was living in Vallejo at the time of the shooting, and Esco, Deonte M., and Dontaye T. all had ties to Vallejo.

On the night of the shooting, Aaron C. was sleeping in his vehicle outside the Shell station when he was awakened by the gunfire. He looked past the Shell station and saw a person near the driver's side of a white pickup truck with tattoos on his hand firing a gun, then getting back into the truck. Aaron C. thought this man had been shot. When Aaron C. contacted the police after the shooting, he selected appellant's photograph as looking similar to the man he saw, but at trial he testified that the person in the photograph had a darker complexion than appellant.

Vandy Webb, appellant's wife, testified that in April 2020 they had been dating for years but were not yet married. Around 11:00 p.m. on April 17, 2020, Vandy received a call from appellant and, based on that conversation, she immediately drove from her home in Sacramento to Kaiser Richmond. Phone records showed that at 11:34 p.m. (when appellant was being treated at the hospital and did not have his phone), the 707 cell number was used to make a call to Vandy

> lasting several minutes. Records also showed numerous text messages exchanged between the 707 phone and Vandy's phone on April 18. At trial, Vandy testified she did not remember who the call or texts were with or what the communications had been about.

*Webb*, 2023 WL 8817852, at *1-2 (footnote omitted).

## II. LEGAL STANDARD

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), district courts may review a petition for writ of habeas corpus on "behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (discussing 28 U.S.C. § 2254(d)(1)). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. A federal habeas court "should ask whether the state court's application of clearly established federal law was objectively unreasonable," *id.* at 409, and "may not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly," *id.* at 411.

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the district court looks to the last reasoned opinion of the highest court to analyze whether the state judgment was erroneous under the standard of Section 2254(d). *Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991).

United States District Court
Northern District of California

As grounds for federal habeas relief, Petitioner asserts that: (1) his rights were violated under the California Racial Justice Act ("CRJA"), California Penal Code section 745; (2) trial counsel was ineffective; (3) there was an improper jury instruction regarding a firearm enhancement; and (4) cumulative error. ECF No. 1 at 5, 9, 11. The California Court of Appeal is the highest court to issue a reasoned decision on all the claims except for the ineffective assistance of counsel claim that was denied in a reasoned decision by the California Supreme Court.

## III. DISCUSSION

### A. California Racial Justice Act

Petitioner contends that the trial court violated his rights under the CRJA and the Equal Protection Clause by ruling that certain rap lyrics were admissible if he testified. ECF No. 1 at 9, 11.

#### 1. Legal Standard

Federal habeas corpus relief is available only when a petitioner has been convicted or sentenced in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a). It is well-established that alleged state law errors are not cognizable on federal habeas review. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Id.* at 67-68.

#### 2. Analysis

The California Court of Appeal denied this claim:

> Section 745 prohibits criminal convictions obtained "on the basis of race, ethnicity, or national origin." (§ 745, subd. (a).) A violation is established if it is shown, by a preponderance of the evidence, that: "During the defendant's trial, in court and during the proceedings, the judge, an attorney in the case, a law enforcement officer involved in the case, an expert witness, or juror, used racially discriminatory language about the defendant's race, ethnicity, or national origin, or otherwise exhibited bias or animus towards the defendant because of the defendant's race, ethnicity, or national origin, whether or not purposeful. This paragraph does not apply if the person speaking is relating language used by another that is relevant to the case or if the person speaking is giving a racially neutral and unbiased physical description of the suspect." (§ 745, subd. (a)(2).) We assume without deciding that we can consider appellant's Racial Justice Act claim even though appellant did not testify.
>
> Appellant argues that "the admission of rap lyrics would, more likely

> than not, trigger the jury's implicit racial bias against African American men in violation of § 745(a)(2)" and that "Any inculpatory value in the use of the rap lyrics was necessarily based on racial stereotypes and inaccurate literal interpretation." In effect, appellant argues that any time rap lyrics are introduced against a criminal defendant, the evidence will cause the jury to be implicitly biased and therefore "exhibit[ ] bias or animus towards the defendant because of the defendant's race." To accept this argument would be to find that the prosecution's use of a defendant's rap lyrics is always a violation of the Racial Justice Act.
>
> We see no basis to conclude that the Legislature intended such a result. To the contrary, after enacting the Racial Justice Act, the Legislature enacted Evidence Code section 352.2, discussed above. In so enacting, the Legislature expressly provided: "It is the intent of this Legislature to provide a framework by which courts can ensure that the use of an accused person's creative expression will not be used to introduce stereotypes or activate bias against the defendant, nor as character or propensity evidence; and to recognize that the use of rap lyrics and other creative expression as circumstantial evidence of motive or intent is not a sufficient justification to overcome substantial evidence that the introduction of rap lyrics creates a substantial risk of unfair prejudice." (Stats. 2022, ch. 973, § 1(b).) This statement, and Evidence Code section 352.2 itself, make clear that the Legislature contemplated rap lyrics could be admitted in evidence in certain narrowly defined circumstances. We therefore decline to construe the Racial Justice Act such that the use of rap lyrics is always a violation. Appellant has failed to establish a violation of the Racial Justice Act.

*Webb*, 2023 WL 8817852, at *9 (footnote omitted).

This claim that the trial court violated Petitioner's rights by ruling that certain rap lyrics were admissible if he testified, only presents a state law claim regarding the CRJA. Pursuant to the legal standards above, this Court cannot reexamine the California Court of Appeal's holding regarding state law. Other courts have also held that a state court's rejection of a CRJA claim is not cognizable on federal habeas review. *See Brooks v. McDowell*, No. 22-6334 JST, 2024 WL 536352, at * 3 (N.D. Cal. Feb. 9, 2024) (denying CRJA claim because it only alleged a violation of state law); *Harris v. Cisneros*, No. 22-0074 CRB, 2022 WL 1082015, at *4 (N.D. Cal. Apr. 11, 2022) ("Petitioner is not entitled to federal habeas relief on his challenge to the state courts' denial of his petition for relief under CRJA."), *certificate of appealability denied*, No. 22-15715, 2023 WL 74550738 (9th Cir. 2023).

Petitioner also argues that his rights were violated under the Equal Protection Clause. However, he first raised this claim in the instant federal petition and did not exhaust the claim in



United States District Court
Northern District of California

state court. Regardless, a district court may proceed to deny an unexhausted claim on the merits in limited circumstances. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). "[A] federal court may deny an unexhausted petition on the merits only when it is perfectly clear that the applicant does not raise even a colorable federal claim." *Cassett v. Stewart*, 406 F.3d 614, 624 (9th Cir. 2005). Notwithstanding the lack of exhaustion, the Court concludes that Petitioner is not entitled to relief.

Petitioner's specific argument regarding an Equal Protection Clause violation is not clear. He contends that his rights were violated by, "the prosecution using racially coded language and racially discriminatory jury selection practices," and a "systemic pattern of disparate treatment of African-American defendants in similar circumstances." ECF No. 1 at 9. He fails to identify the racially-coded language at issue or any irregularities with the jury selection process. He does not describe the disparate treatment of African-American defendants or compare treatment to a different group. These conclusory allegations with no support are insufficient. *See James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief"). This claim is denied.

**B. Ineffective Assistance of Counsel**

Petitioner also argues that trial counsel was ineffective for failing to object to evidence under the CRJA, and for failing to file a suppression motion, investigate the case, present exculpatory witnesses, and object to prejudicial evidence. ECF No 1 at 5, 9. In a state habeas petition, Petitioner argued that counsel was ineffective for failing to object under the CRJA, which was denied by the California Supreme Court. Answer, ECF No. 10-3, Ex. J at 1914-24, 2019. The other claims were not exhausted.

**1. Legal Standard**

The Sixth Amendment guarantees effective assistance of counsel to defendants in criminal cases. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). The benchmark for a claim of ineffectiveness is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be said to have produced a just result. *Id.* To prevail on a

Sixth Amendment ineffectiveness claim, petitioner must establish two things. First, he must demonstrate that counsel's performance was deficient in that it fell below an "objective standard of reasonableness" under prevailing professional norms. *Id.* at 687-88. Second, he must establish that he was prejudiced by counsel's deficient performance in that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

**2. Analysis**

The California Supreme Court denied the claim that counsel erred regarding the CRJA:

> The petition for writ of habeas corpus has been read and considered. Petitioner contends among other claims, that he is entitled to relief under the Racial Justice Act of 2020 (Pen. Code, § 745). In this respect petitioner claims the trial court violated the Racial Justice Act when it ruled that lyrics found on petitioner's phone would be admissible on cross-examination, should petitioner testify.
>
> The petition fails to make a prima facie showing of entitlement to relief under the Racial Justice Act. (Pen. Code, § 1473, subd. (e).) The petition does not explain how the trial court's ruling constituted discriminatory language under the Act. (Pen. Code, § 745, subd. (a)(2) [this provision does not apply if the person speaking is relating language used by another that is relevant to the case"].)
>
> The petition for write of habeas corpus is denied.

Answer, ECF No. 10-3, Ex. J at 2019.

Petitioner has not demonstrated that the state court's ruling was objectively unreasonable. The California Supreme Court found that Petitioner failed to make a prima facie showing of entitlement to relief for his claim and that he failed to explain how the trial court's ruling was discriminatory. He does not address how this finding was unreasonable. Furthermore, the California Court of Appeal held in the claim above that there was no underlying violation of the CRJA. Therefore, any objection made by trial counsel would have failed. Counsel could not have been deficient for failing to bring a futile objection under the CJRA. *See, e.g.*, *Premo v. Moore*, 562 U.S. 115, 124 (2011) (counsel's performance not deficient under *Strickland* for failing to make futile motion); *Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996) (counsel's failure to take futile action is not deficient performance). Even if trial counsel was deficient, Petitioner presents

no arguments that he suffered prejudice and that if there was an objection, the result of the proceeding would have been different. He does not state that he would have testified if the lyrics were inadmissible, the substance of his testimony, and the effect on the verdict.

Petitioner also argues that trial counsel was ineffective for failing to file a suppression motion, investigate the case, present exculpatory witnesses, and object to prejudicial evidence. These claims were not exhausted in state court. The Court reviews the claims and denies them on the merits. *See* 28 U.S.C. § 2254(b)(2). Petitioner does not specify what suppression motion should have been filed, what investigation trial counsel should have initiated, or what prejudicial evidence was admitted. These conclusory allegations with no support are insufficient to warrant relief. *See James*, 24 F.3d at 26. Where a petitioner challenges the failure to interview or call witnesses, mere speculation that a witness might have given helpful information if interviewed or called to testify is not enough to establish ineffective assistance. *See Bragg v. Galaza*, 242 F.3d 1082, 1087 (9th Cir.), *amended*, 253 F.3d 1150 (9th Cir. 2001). To establish prejudice, a petitioner must show that the witness was likely to have been available to testify, that the witness would have given the proffered testimony, and that the witness's testimony created a reasonable probability that the jury would have reached a verdict more favorable to the petitioner. *Alcala v. Woodford*, 334 F.3d 862, 872-73 (9th Cir. 2003), *abrogated on other grounds by, Crawford v. Washington*, 541 U.S. 36 (2004). Petitioner does not identify any specific witness, discuss their potential testimony, or address how it would have led to a more favorable verdict. This claim is denied.

### C. Jury Instructions

Petitioner contends that the trial court incorrectly instructed the jury that it could find a firearm discharge enhancement, Penal Code section 12022.53(d), based on a theory of aiding and abetting. ECF No. 1 at 5; *Webb*, 2023 WL 8817852, at *3-4.

#### 1. Legal Standard

A challenge to a jury instruction solely as an error under state law does not state a claim cognizable in federal habeas corpus proceedings. *See Estelle*, 502 U.S. at 71-72; *Reno v. Davis*, 46 F.4th 821, 841 (9th Cir. 2022) (state high court's interpretation of California's 1977 death

penalty statute and finding unanimity instruction consistent with state law binds court on federal habeas review). Nor does the fact that a jury instruction was inadequate by Ninth Circuit direct appeal standards mean that a petitioner who relies on such an inadequacy will be entitled to habeas corpus relief from a state court conviction. *See Duckett v. Godinez*, 67 F.3d 734, 744 (9th Cir. 1995) (citing *Estelle* at 71-72).

To obtain habeas relief for errors in the jury charge, a petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. *See Estelle*, 502 U.S. at 72; *see also Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974) ("'[I]t must be established not merely that the instruction is undesirable, erroneous or even "universally condemned," but that it violated some [constitutional right].'"). The instruction may not be judged in artificial isolation but must be considered in the context of the instructions as a whole and the trial record. *See Estelle*, 502 U.S. at 72. In other words, the court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process. *See United States v. Frady*, 456 U.S. 152, 169 (1982) (citing *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)).

**2. Analysis**

The California Court of Appeal set forth the relevant background and denied this claim:

> During deliberations, the jury sent the following question: "Does aiding and abetting apply to the portion of 'count 1' stating: [¶] '. . . the defendant personally discharged a firearm and caused great bodily injury or death to Justin Isaiah Esco within the meaning of Penal Code [s]ection 12022.53(d).'" The court responded, "Yes."
>
> . . . .
>
> Section 12022.53, subdivision (d) (hereafter section 12022.53(d)) provides, in relevant part, "a person who, in the commission of [specified felonies, including murder], personally and intentionally discharges a firearm and proximately causes great bodily injury . . . or death, to a person other than an accomplice, shall be punished by an additional and consecutive term of imprisonment in the state prison for 25 years to life."
>
> . . . .
>
> The People concede that the enhancement "requires personal and intentional discharge of a firearm," but argue it "does not require that the shot discharged strike or kill the victim" because the enhancement

only requires the defendant's firing proximately caused the injury or death. "Section 12022.53(d) requires that the defendant 'intentionally and personally discharged a firearm' . . . but only that he 'proximately caused' the great bodily injury or death." (*People v. Bland* (2002) 28 Cal.4th 313, 336.) As the People argue, courts have found proximate causation satisfied for purposes of section 12022.53(d) when a defendant was one among multiple shooters and the evidence does not reveal which shot caused the great bodily injury or death. For example, in *People v. Lopez* (2021) 73 Cal.App.5th 327, the Court of Appeal affirmed a section 12022.53(d) true finding where "[t]he evidence was sufficient to permit the jury to conclude that regardless of which defendant fired the shot that killed [the victim], [the defendant] personally and intentionally discharged a firearm, proximately causing [the victim's] death. The act that set in motion the chain of events resulting in [the victim's] death was the act, committed by both defendants, of firing a flurry of gunfire into the car in which [the victim] and [another person] were seated . . . ." (*Lopez* at p. 333; *see also Bland*, at pp. 337-338 ["[In a previous case,] two persons engaged in a gun battle, killing an innocent bystander. Who fired the fatal bullet, and thus who personally inflicted the harm, was unknown, but we held that the jury could find that both gunmen proximately caused the death. [Citation.] The same is true here [for purposes of § 12022.53(d) enhancement]. If defendant did not fire the bullets that hit the victims, he did not personally inflict, but he may have proximately caused, the harm."].)

The People contend there is no reasonable possibility the jury understood the instruction to mean appellant need not have personally discharged a firearm. We disagree. The People point to the original instruction indicating such a requirement (see fn. 3, *ante*), but the jury's question included both elements of the enhancement—discharge of a firearm and causation—and the trial court's response indicated no distinction between the two elements. Because there is a reasonable possibility the jury construed the instruction to mean that, as long as the elements of aiding and abetting were met, they need not find appellant personally discharged a firearm, the trial court's instruction was erroneous.

However, we agree with the People that the error was harmless beyond a reasonable doubt. The jury was instructed it could find the enhancement allegation true if appellant personally discharged a firearm (a valid theory), or if appellant aided and abetted another who personally discharged a firearm (an invalid theory). "Where a jury is instructed on alternate theories of liability, one legally valid and one legally invalid, a federal constitutional error has occurred" and reversal is required "unless we determine the error was harmless beyond a reasonable doubt." (*In re Lopez* (2023) 14 Cal.5th 562, 580.) "A reviewing court must determine whether any rational jury would have found the defendant guilty based on a valid theory if the jury had been properly instructed. 'The reviewing court examines what the jury necessarily did find and asks whether it would be impossible, on the evidence, for the jury to find that without also finding the missing fact as well.' [Citation.] In other words, if '"[n]o reasonable jury that made all of these findings could have failed to find"' the facts necessary to support a valid theory, the alternative-theory error was harmless." (*Id.* at pp. 584-585.)

> Another verdict demonstrates the jury necessarily found appellant was one of the shooters: the jury found appellant guilty of possession of a firearm by a prohibited person. First, there was no evidence that appellant possessed a firearm other than as one of the shooters. Second, the jury could not have convicted appellant of this count based on aiding and abetting principles because it was instructed that one of the elements was "The defendant had previously been prohibited" and that "The defendant and the People have stipulated, or agreed, that the defendant was previously prohibited." Because none of the other shooters were identified at trial, there was no evidence that any other shooter was a prohibited person, and therefore the jury could not have convicted appellant of aiding and abetting a prohibited person's possession of a firearm. Accordingly, because """[n]o reasonable jury that made all of these findings could have failed to find""" appellant personally discharged a firearm, the instructional error was harmless. (*In re Lopez*, *supra*, 14 Cal.5th at p. 585.).

*Webb*, 2023 WL 8817852, at *3-5 (footnotes omitted).

The California Court of Appeal found the trial court's instruction was erroneous but held that the error was harmless beyond a reasonable doubt. The court cited the harmless error standard from *Chapman v. California*, 386 U.S. 18, 24 (1998), in reaching its conclusion. Under *Chapman*, "before a federal constitutional error can be harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman*, 386 U.S. at 24. While the California Court of Appeal did not specifically cite *Chapman*, the Court described the correct legal standard and cited to *In re Lopez*, 14 Cal. 5th 562, 580-85 (2023), which extensively cited *Chapman*. *Webb*, 2023 WL 8817852, at *3-5.

If the state court finds an error harmless, that determination is reviewed under the deferential AEDPA standard and *Brecht v. Abrahamson*, 507 U.S. 619 (1993). This means that relief is not available for the error "unless the state court's *harmlessness determination itself* was unreasonable." *Davis v. Ayala*, 576 U.S. 257, 269 (2015) (quoting *Fry v. Pliler*, 551 U.S. 112, 119 (2007) (emphasis in original). In other words, a federal court may grant relief only if the state court's harmlessness determination "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

The California Court of Appeal's denial of this claim as harmless error was not contrary to or an unreasonable application of clearly established federal law. The state court noted that the

jury found Petitioner guilty of possession of a firearm, and the only evidence presented that he possessed a firearm was that he was one of the shooters and he could not be convicted of this count on an aiding and abetting theory. *Webb*, 2023 WL 8817852, at *5. Petitioner presents no arguments addressing the state court's analysis and why it was deficient. The California Court of Appeal essentially found that the evidence presented at trial led the jury to conclude that Petitioner was one of the shooters and was not aiding and abetting; therefore, the erroneous instruction from the trial court was harmless. While Petitioner disagrees with this assessment, he has not shown that the California Court of Appeal's harmlessness determination was applied in an objectively unreasonable manner that lacked justification and that there was an error beyond disagreement. Petitioner is not entitled to relief.

**D. Cumulative Error**

Finally, Petitioner contends that the cumulative effect of these errors deprived him of a fair trial. ECF No. 1 at 5.

**1. Legal Standard**

In some cases, although no single trial error is sufficiently prejudicial to warrant reversal, the cumulative effect of several errors may still prejudice a defendant so much that his conviction must be overturned. *See Alcala v. Woodford*, 334 F.3d 862, 893-95 (9th Cir. 2003) (reversing conviction where multiple constitutional errors hindered defendant's efforts to challenge every important element of proof offered by prosecution). Cumulative error is more likely to be found prejudicial when the government's case is weak. *See id.*; *see, e.g., Thomas v Hubbard*, 273 F.3d. 1164, 1180 (9th Cir. 2002) (noting that the only substantial evidence implicating the defendant was the uncorroborated testimony of a person who had both a motive and an opportunity to commit the crime), *overruled on other grounds by Payton v. Woodford*, 299 F.3d 815, 829 n.11 (9th Cir. 2002). However, where there is no single constitutional error existing, nothing can accumulate to the level of a constitutional violation. *See Hayes v. Ayers*, 632 F.3d 500, 524 (9th Cir. 2011). Similarly, there can be no cumulative error when there has not been more than one error. *United States v. Solorio*, 669 F.3d 943, 956 (9th Cir. 2012).



United States District Court
Northern District of California

**2. Analysis**

Petitioner raised two different cumulative error claims in state court. Both included underlying claims that are not part of this federal petition. Claims of cumulative error raised on direct review that were included in this federal petition were his arguments regarding the CRJA violation and the erroneous jury instruction. Answer, ECF No. 10-3, Ex. H at 1754-55. The California Court of Appeal denied this claim stating, "[a]ppellant argues he was cumulatively prejudiced by trial errors. We have found all errors or assumed errors harmless. Considered together, the errors and assumed errors are still harmless. (*See People v. Cain* (1995) 10 Cal.4th 1, 82 ["Defendant was entitled to a fair trial, not a perfect one."].)" *Webb*, 2023 WL 8817852, at *9, n.14. The only claim exhausted in Petitioner's state habeas petition regarding cumulative error that is raised in this federal petition is ineffective assistance of counsel. Answer, ECF No. 10-3, Ex. I at 1906-08. That claim was denied. *Id.*, Ex. J at 2019.

Respondent argues that the cumulative error claim is unexhausted because the separate claims were not exhausted together. Answer, ECF No. 10-1 at 21-22. The Court does not need to address the exhaustion argument because the claims are meritless. *See* 28 U.S.C. § 2254(b)(2). This Court has not found any constitutional errors, let alone multiple errors that cumulatively were so prejudicial as to warrant habeas relief. This claim is denied.

## IV. CERTIFICATE OF APPEALABILITY

The federal rules governing habeas cases brought by state prisoners require a district court that issues an order denying a habeas petition to either grant or deny therein a certificate of appealability. *See* Rules Governing § 2254 Cases, Rule 11(a).

A judge may grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and the certificate must indicate which issues satisfy this standard. *Id.* § 2253(c)(3). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, Petitioner has made no showing warranting a certificate.

United States District Court
Northern District of California

**V. CONCLUSION**

The petition for writ of habeas corpus is DENIED. A Certificate of Appealability is DENIED. The Clerk shall TERMINATE all pending motion, enter judgment in favor of Respondent, and close the file.

**IT IS SO ORDERED.**

Dated: November 10, 2026

EUMI K. LEE
United States District Judge